18

SERVICE FIRE INS. CO. *v.* CRAFT.

Nov. 23, 1953

No. 38957 44 Adv. S. 47 67 So. 2d 874

*W. Arlington Jones*, Hattiesburg, for appellant.

*Cephus Anderson,* Hattiesburg; *W. W. Pierce,* Jackson, for appellee.

ROBERDS, P. J.

On March 25, 1950, Service Fire Insurance Company of New York, the appellant, issued to Craft, the appellee, an insurance policy covering property damage to a described automobile belonging to Craft. On Saturday night, November 4, 1950, this vehicle, being then driven by Craft, was damaged in a collision with another automobile. This occurred on Highway 51 a short distance south of McComb, Mississippi. The wrecked car was later pulled into McComb and then to the garage of Travis Leigh at Hattiesburg, Mississippi, the seller of the automobile to Craft. On Monday, November 7, 1950, Hogue, representing the insurer, and Craft met - at Leigh's garage to discuss settlement of the damage. The insurer chose to repair and recondition the car rather than pay Craft money damage. Craft then signed a paper authorizing the insurer to have the vehicle reconditioned. At this point the parties differ as to just what the agreement was. Hogue says Leigh figured up the amount he estimated it would cost to repair and recondition the automobile and that sum was $482.85; that the parties agreed upon that amount and it was inserted into the instrument, which was a combination proof of loss and release of the insurer from further liability

upon payment of said sum. Craft says no agreement as to the amount was reached between the parties; that this was to be later determined and then inserted into the instrument; that the amount was left blank; that he then signed the paper so that the insurer would be authorized to proceed with the repairs, but the true amount necessary to recondition and repair the automobile would be determined later and release of the insurer from liability was dependent and conditioned upon that being done. In other words, that it was a conditional execution and delivery of the release. Here are parts of Craft's testimony pertinent to that question:

"Q. All right, now then, on that time out there, did they request you to sign——did Mr. Hogue over there request you to sign an automobile proof of loss? A. Yes, he stated that before he could authorize Mr. Leigh to proceed with the repair of the car that it would be necessary for me to sign the proof of loss statement. Q. All right, was there any figure in that proof of loss statement as to what it would cost to have that automobile repaired at that time? A. None whatever. We failed to arrive at any figure because we failed to agree on what was to be done, and they did not have quotations at that time and did not have all parts, but that they would proceed with what they could do, was the agreement, and I signed the proof of loss statement in the absence of any figures and per an agreement with Mr. Hogue that we would discuss the final figure and the final results of the repair." Again, Craft said, "He presented numerous papers to me and we had some discussion mainly revolving around the fact that I considered the automobile irreparable. He was assuring me that they could repair it and wanted me to sign a proof of loss statement so that they could proceed with the repairs, and there was some discussion as to prices, but Mr. Leigh and them did not have quotations and did not have all of the materials, and we never could agree on any price, but I signed a proof of loss of statement

for him." As further bearing upon this situation the evidence discloses that the automobile was left at Leigh's garage and there remained undergoing repairs for six days. It was then taken out by Craft, who testified it had not been properly repaired and he detailed many defects yet appearing in the vehicle. At Leigh's request Craft redelivered the car to Leigh, where it remained another six days undergoing repairs. Craft again took the car out of the garage and according to his testimony, the car had not been properly repaired. He requested Hogue to remedy the defects, and Hogue declined to make other repairs on the automobile. Craft detailed many material defects he himself observed and he also testified that he took the car to Fagan Motor Company, Magee, Mississippi, and, without objection, related many serious defects yet remaining as reported to him by Fagan, together with what the cost would be to remedy these defects. We need not set out these items. It is sufficient to say that they aggregate $959.00 over and above the $482.85 appearing in the proof of loss and release when the case was tried as the amount agreed upon between Hogue and Craft, and which amount the insurer paid to Leigh.

Craft brought this suit in the county court to recover judgment against the insurer for the excess above $482.85 necessary to recondition the automobile. The Insurer set up the foregoing writing as a defense. The insured undertook to avoid the effect of that instrument by the foregoing oral testimony. The jury returned a verdict for Craft for $500.00, and judgment was entered for that amount. The circuit court affirmed the action of the county court and the insurer appealed to this Court. The main contention of appellant is that the proof of loss and release instrument, signed by both parties, settled and adjusted all questions between the parties as to the extent of the damage to the car, and released the insurer from liability for payment of any further sum necessary to properly recondition it; and

that no oral proof of unremedied defects, and the amount necessary to remedy them, was competent; that such oral proof would alter the terms of the written instrument, which terms are contractual in their nature, as illustrated by such cases as Baum v. Lynn, 72 Miss. 932; Thompson v. Bryant, 75 Miss. 12; English v. N. O. & N. E. Railroad Co., 100 Miss. 809, 57 So. 223; A. & V. Ry. Co. v. Kropp, 129 Miss. 616, 92 So. 691, and Pearce v. Pierce, 214 Miss. 344, 58 So. 2d 824.

On the other hand, appellee says that this oral proof does not vary the terms of the writing, as to the amount necessary to repair the car, because no amount was stated in the instrument when it was signed by the parties, and, too, that while it is admitted Craft signed the paper, if it was to be effective as a release only upon the condition, if and when the parties should agree upon the amount necessary to recondition the car and such amount was properly inserted into the instrument and that this was never done.

We think the contention of appellant is not well taken under the circumstances here for these reasons: First, no objection was made to the quoted oral testimony which appellant says contradicts the written instrument, nor to his personal estimates, or the information he told the jury Fagan Motor Company gave him, showing the defects existing in the automobile after Leigh had supposedly corrected them and the additional amounts required to remedy such defects. The oral testimony was before the jury for what it was worth. We might rest our decision on that state of the record. Second: The jury found that the consideration for the release was not in the written instrument when it was executed; that this had been inserted later without the knowledge, consent or authority of Craft. That being true the oral proof did not contradict the written instrument as of the time it was signed. That presents a state of facts different from those involved in the cited cases. Third:

 Craft's testimony is susceptible of the inference that this instrument was not to become effective as an adjustment and release of the insurer's liability until the amount of the damage had been agreed upon between the parties and, by such agreement, inserted into the writing. In other words, release of liability was to become effective only upon that condition coming about.
 Parol testimony is competent to show the conditions upon which the writing is to become effective as a contract. 20 Am. Jur., Sec. 1094, p. 955; Butler v. Smith and Tharp, 35 Miss. 457. Oral proof was competent to show that a bond sued on was executed in blank and was filled in contrary to direction. Richards v. Day, Exctr., 137 N. Y. 183, 23 L. R. A. 601. The Court in that case said: "If this had been a complete bond when the plaintiff signed it, although by mistake or fraud it did not express the true agreement between the parties, his sole remedy would have been to procure its reformation, and, when an effort was made to enforce the bond against him, he could not contradict the terms thereof by parol evidence, except by proper allegations in his pleading asking for its reformation. But here the plaintiff did not sign any bond. He signed a blank piece of paper, and it would have been sufficient for him on trial to prove that he simply signed a blank piece of paper, and then it would have been necessary for the defendant to show that he authorized the blank to be filled up, and how and under what circumstances the authority was given, and what the authority was. A party who signs a blank piece of paper cannot be bound to the obligation written therein, unless it can be shown that he gave the person who wrote it authority."

In Campbell v. Davis, 94 Miss. 164, 47 So. 546, this Court admitted parol evidence to show the true indebtedness although such evidence contradicted the note and trust deed the debtor had executed, the Court saying, "The terms of an obligation assumed to be valid, can-

not be varied by parol; but it may be shown by parol what caused the party to thus oblige himself.''

Appellant lays much stress upon the fact that this is an action at law, and not in equity, and that plaintiff does not expressly charge fraud or mistake as to the consideration in this instrument. It may be doubted whether the allegations are not sufficient to embrace a charge of fraud or mistake, but conceding that not to be the case, the suit here is not to set aside or avoid the agreement, but it is to recover the excess of loss over the amount appearing in the writing when the trial was had. The verdict was for that additional amount. And as bearing upon whether appellant itself understood that the amount it was to pay was limited to $482.85, the amount appearing in the release when the case was tried, but which the jury found was not therein when Craft signed it, it appears that appellant paid Leigh said sum on November 16, 1950, after Leigh did the first work on the car, but later, and on December 29, 1950, after the second work had been done by Leigh, appellant paid Leigh the additional sum of $34.50.

 Appellant complains of certain instructions granted the plaintiff. The theory of this suit, as stated, was to recover the correct and accurate amount necessary to recondition the automobile over and above the amount stated in the so-called release, and the case was tried upon that theory. Considering together all of the instructions granted both plaintiff and defendant that was the theory on which the case was tried. It is clear the jury gave the insurer credit for the amount it had paid Leigh and its verdict found the insurer was liable for $500.00 over and above that amount. We find no reversible error in the instructions when all are taken and considered together.

Affirmed.

*Hall, Lee, Kyle* and *Holmes, JJ.*, concur.