INZER, Presiding Justice,
for the Court:
This is an appeal by First National Bank of Jackson from a decree of the Chancery Court of the First Judicial District of Hinds County dismissing its bill of complaint against IDS Mortgage Corporation and others. The appeal involves the priority of deeds of trust on the Jackson Hilton Hotel property in the City of Jackson. The controversy is between the First National Bank of Jackson and IDS Mortgage Corporation, both of whom held deeds of trust on the hotel property. The deeds of trust were executed by Southern Business & Industrial Development Corporation, the owner of the property, prior to its foreclosure under the deed of trust held by IDS Corporation.
The chancellor found from the evidence that on June 2, 1970, Southern Business executed its deed of trust to IDS securing a $2,850,000 construction loan for the construction of the hotel. From June 2, 1970, until September 22,1970, Mississippi Valley Title Insurance Company made disbursements under this loan and guaranteed IDS a first mortgage position. Because Southern Business encountered financial difficulty, construction was halted. On February 10, 1971, Southern Business executed a second deed of trust on the Hilton properties securing an indebtedness of $235,188.80 to the First National Bank. On January 13, 1972, IDS increased its construction loan to $4,050,000 and Southern Business executed its deed of trust securing this indebtedness and on the same date FNB executed a subordination agreement assuring IDS of a first mortgage position.
In late 1972 it became apparent that additional funds would be needed to complete the construction of the hotel, and Southern Business began trying to make arrangements to increase the construction loan as well as to arrange for permanent financing. IDS agreed to increase its loan by $750,000 provided that another subordination agreement was obtained from the bank. When the bank was approached relative to the further subordination agreement, it refused to agree unless it was paid $100,000 on Southern Business’ indebtedness to FNB. Southern Business arranged for this sum to be paid to the bank out of funds provided by IDS and upon the payment of this amount, the bank executed in blank an additional subordination agreement in favor *777 of IDS leaving blank spaces therein for the insertion of the dates, recording data, and amounts. When this subordination agreement was delivered to Mississippi Valley it contained the blank spaces. A secretary filled in the blank spaces, and in so doing she erroneously filled it in with the same data that was in the first subordination agreement.
Thereafter Mississippi Valley disbursed funds to the extent of $4,797,070.81. On each disbursement IDS was guaranteed a first mortgage position by Mississippi Valley. Southern Business made default, and IDS foreclosed its deed of trust and bought the property in at the sale for $5,239,804, being the total amount of its indebtedness and expenses of sale.
The controversy in this case centers around the second subordination agreement executed by the bank. The bank contends that it subordinated its deed of trust only to the extent of $4,050,000 plus interest and attorneys’ fees and expenses and that its deed of trust was and is prior to any lien and claim of IDS in excess of this sum. The bank contends that by the execution of the second subordination agreement it only extended the time of the original agreement and insofar as the bank was concerned, it was absolutely meaningless. The bank contended in the trial court and contends here that parol evidence was not admissible to vary the express terms of the second . subordination agreement. The chancellor overruled the objections to this evidence and admitted parol evidence to show the real meaning of the instrument in question.
A decision in this case hinges on the question of whether parol evidence was admissible to show the meaning of the second instrument. If this evidence was admissible the chancellor was certainly justified in finding from the evidence that the purpose and intent and reason for the execution of the second subordination agreement was to assure IDS of its first mortgage position.
The chancellor found as a fact that the second subordination agreement was executed in blank in favor of IDS. , The chancellor in his opinion said:
There was no denial as to the execution of this blank agreement and a copy of the blank agreement was retained in the FNB file which contained the blank spaces for insertion of the date, the month, the year, and the recording data of the IDS deed of trust to which it was subordinating its deed of trust. When the second subordination agreement was received by Mississippi Valley from Mr. Nix, it did contain blank spaces for said recording date and information describing the additional amount included in the IDS deed of trust. It was developed in the trial that Mississippi Valley had not received the Modification Agreement of January 26, 1973 which had been executed by the parties but had not been placed of record. And thus, no information was available to fill in the blank spaces. Mr. Taylor testified that his secretary filled in these blanks with the only recording data she had which was the date of the data of the IDS deed of trust dated January 13, 1972.
Since the agreement was executed with blank spaces for the recording data and the date of the IDS deed of trust, the parol testimony did not in any way contradict the written instrument as of the time it was signed.
The case of Service Fire Insurance Co. v. Craft, 219 Miss. 18, 67 So.2d 874 (1953), involved a release which the jury could find from the evidence was signed by Craft with blank space as to the amount of the consideration. It was filled in by the insurance agent for an amount that did not cover the full cost of the repair to the automobile in question. The jury found that the instrument did not correctly reflect the agreement of the parties and found for Craft. On appeal the insurance company contended that the proof of loss and release signed by both parties settled and adjusted all questions between the parties as to the extent of the damages and no oral proof was competent to vary the terms of the written instrument and cited several cases in support of this argument. We held that *778 since the instrument was signed with the amount of the consideration left blank, pa-rol proof did not contradict the written instrument as of the time it was signed, and this presented a state of facts different from those involved in decided cases. In so holding, we said:
Parol testimony is competent to show the conditions upon which the writing is to become effective as a contract. 20 Am. Jur., Sec. 1094, p. 955; Butler v. Smith and Tharp, 35 Miss. 457, Oral proof was competent to show that a bond sued on was executed in blank and was filled in contrary to direction.' Richards v. Day, Exctr., 137 N.Y. 183, 33 N.E. 146, 23 L.R.A. 601. The Court in that case said: “If this had been a complete bond when the plaintiff signed it, although by mistake or fraud it did not express the true agreement between the parties, his sole remedy would have been to procure its reformation, and, when an effort was made to enforce the bond against him, he could not contradict the terms thereof by parol evidence, except by proper allegations in his pleading asking for its reformation. But here the plaintiff did not sign any bond. He signed a blank piece of paper, and it would have been sufficient for him on trial to prove that he simply signed a blank piece of paper, and then it would have been necessary for the defendant to show that he authorized the blank to be filled up, and how and under what circumstances the authority was given, and what the authority was. A party who signs a blank piece of paper cannot be bound to the obligation written therein, unless it can be shown that he gave the person who wrote it authority.”
In Campbell v. Davis, 94 Miss. 164, 47 So. 546, 547, this Court admitted parol evidence to show the true indebtedness although such evidence contradicted the note and trust deed the debtor had executed, the Court saying, “The terms of an obligation assumed to be valid, cannot be varied by parol; but it may be shown by parol what caused the party to thus oblige himself.”
(219 Miss, at 25, 26, 67 So.2d at 876, 877).
The chancellor after reviewing the evidence in this case stated:
There are two subordination agreements involved and both are as executed practically the same. To determine the meaning and purpose, it would require of necessity parol evidence as to why the same instrument was executed twice, and the facts surrounding this execution would require parol evidence. The letter of Mr. Nix, an officer of FNB, and the payment of the $100,000 should all be considered along with surrounding circumstances in order to make a determination of the meaning.
Therefore, the Court finds as a matter of law and facts, and it is the opinion of the Court that First National Bank of Jackson completely subordinated all its indebtedness to the lien of IDS, and this cause be dismissed as to First National Bank of Jackson.
When the officer of the bank executed the subordination agreement containing blank spaces therein, it granted implied authority for the instrument to be completed in accordance with the understanding of the parties. The chancellor found that the understanding was intended to subordinate the bank’s deed of trust to the additional advance of $750,000 and the fact that it was erroneously filled in to show the same data as contained in the first subordination agreement did not prohibit IDS from showing by parol testimony the true intention of the parties. Furthermore, since the instrument was not completed at the time it was signed, it was not necessary for IDS to seek a reformation of the instrument, but could show by parol evidence the intention of the parties and the reason for the execution of the instrument.
For the reasons stated, this case must be and is affirmed.
AFFIRMED.
PATTERSON, C. J., SMITH, P. J., and ROBERTSON, SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.