# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 92-CA-01172-SCT

*IN THE MATTER OF THE ESTATE OF THOMAS A. PARKER, DECEASED: CAROL NORMAN FONTENOT, EXECUTRIX OF THE LAST WILL AND TESTAMENT OF THOMAS A. PARKER, DECEASED*

*v.*

*JOHN DAVID DORCHAK AND DONNA RITTENER DORCHAK*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/14/92 |
| TRIAL JUDGE: | HON. WILLIAM L. STEWART |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT C. GALLOWAY |
| | ERNEST G. MARTIN, JR. |
| ATTORNEY FOR APPELLEES: | FRANK P. WITTMANN, III |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 5/9/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/30/96 |

**BEFORE PRATHER, P.J., ROBERTS AND MILLS, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## I. INTRODUCTION

¶1. Carol Fontenot, Executrix of the estate of Thomas A. Parker, appeals the ruling of the Chancellor of Harrison County, Mississippi that interest payments due under a promissory note executed between the deceased Parker and John Dorchak on July 13, 1989 should not begin accruing from the date of the execution of said note, but rather beginning in October of 1993, the date set by the Chancellor for Dorchak to begin possession of the real property securing said note. For the following reasons, this Court affirms.

## II. STATEMENT OF THE FACTS

¶2. Thomas Parker died on October 25, 1990 at age 93. Parker's will left his estate in three equal shares to Sally Norman, T. Rutledge Parker, and the children of his deceased daughter. In his later years, Tom Parker had increasingly become beset by financial problems, and on May 11, 1988 Parker sold to his step-son John Dorchak an option to purchase his residence, known as "Windy Acres", for $10,000 immediate cash payment and $20,000 to be paid over time. This arrangement provided benefits to both parties, in that

it gave Tom Parker some much needed funds for his remaining years, and it gave John Dorchak an option to purchase a residence once his stint with the Navy was up in 3 years.

¶3. The option contract, like all the documents relating to the land transaction, was drafted by Dorchak's attorney, and the evidence at trial indicated that Tom Parker never told his children that he had made this deal with John Dorchak. The option contract provided that the sales price of the house, once Dorchak chose to enforce said option, was to be $225,000, of which, as noted above, Dorchak was to pay $10,000 up front and an additional $20,000 regardless of when and if he chose to enforce the option.

¶4. On July 13, 1989, John Dorchak did in fact exercise the option to buy Windy Acres, executing a promissory note for $215,000, which was secured by a deed of trust on the property. The warranty deed gave title to John Dorchak and his wife subject to a life estate in the "cottage" of the property in favor of Tom Parker. The promissory note, which is the central document in this appeal, contained language obligating Dorchak to pay interest on the $215,000 indebtedness "from date", and, as will be seen, this language has given rise to the main issue in the appeal; namely, on which date the Dorchaks were obligated to begin making payments of interest on the note. The Executrix contends that the term "from date" indicates that the interest on the indebtedness was to begin accruing on the date of the promissory note, but Appellees point to the language further down on the promissory note, which provides that $195,000 of the indebtedness and interest thereupon is to be paid by the Dorchaks in monthly installments beginning "thirty days after the commencement of occupancy of the main residence by the undersigned promissors."

¶5. This language referring to the beginning of occupancy by the Dorchaks illustrates another feature of this rather intricate land transaction: the Dorchaks were not obligated to begin making payments on $195,000 of the indebtedness until they chose to take possession of the property. Moreover, the documents surrounding the transaction did not obligate the Dorchaks to begin occupancy at any given time. The trial court remedied this omission by obligating the Dorchaks to begin occupancy and thus begin making payments on the $195,000 on October 14, 1993. The Executrix was pleased with this ruling by the trial judge but was not pleased with his ruling that the Dorchaks were not required to make payments of interest on the $195,000 until they took occupancy of the property that same month.

¶6. The Executrix filed a Notice of Appeal on November 12, 1992 from the chancellor's ruling with regard to the interest payments. The Executrix argues on appeal that the Dorchaks should be required to pay the 9% interest on the $195,000 indebtedness which, she argues, should have been accruing between the date of the promissory note in July, 1989, and the date set by the trial court for the beginning of payments-October, 1993.

### III. LEGAL ANALYSIS

**A. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THE APPELLEES, JOHN DORCHAK AND DONNA DORCHAK, ARE NOT LIABLE FOR INTEREST ON THE PRINCIPAL BALANCE OF THE PROMISSORY NOTE DATED JULY 13, 1989, FROM THE DATE OF THE NOTE UNTIL THE BEGINNING OF AMORTIZATION OF THE NOTE IN OCTOBER, 1993.**

¶7. In deciding what evidence may properly be considered in determining the date on which interest payments should begin, it is crucial to determine whether or not the promissory note in question is

incomplete or ambiguous and thus whether under the Parol Evidence Rule extrinsic evidence may come in to supplement said note. In ***Busching v. Griffin***, 542 So.2d 860, 865 (Miss. 1989), this Court stated that "That point implicates our Parol Evidence Rule. That rule provides that where a document is incomplete, parol evidence is admissible to explain the terms but, in no event, to contradict them."

¶8. The promissory note provides as follows (with emphasis added to particularly relevant parts):

> FOR VALUE RECEIVED, WE, the undersigned do promise to pay unto THOMAS PARKER, his heirs, successors or assigns, at his place of residence, or at any other place as may be designated in writing by the holder hereof, the sum TWO HUNDRED AND FIFTEEN THOUSAND AND NO/100'S ($215,000.00) DOLLARS with interest at the rate of 9% per annum **from date until paid in the following manner**:

> $20,000.00 to be paid in 12 equal quarterly installments of $ 450.00 per quarter **beginning on October 1, 1989** and continuing on the 1st day of each quarter thereafter with the final payment of principal and all accrued interest, if any to be paid on of before July 1, 1992, if not sooner paid.

> $195,000.00 to be paid in 240 monthly installments of principal and interest in the amount of $1, 754.48 **beginning thirty days after the commencement of occupancy** of the main residence by the undersigned promisors and continuing on the like day of each month thereafter until fully paid.

¶9. The Executrix asserts that the promissory note dated July 13, 1989 provides that there shall be interest on the remaining $215,000 indebtedness "from date". The Executrix contends that this is clear and unambiguous language which the trial judge should not have allowed to be contradicted by extrinsic evidence. However, the Dorchaks note that, within the same promissory note, there is language which provides that the they are not required to begin payments on $195,000 of the debt until thirty days after they choose to begin occupancy thereof and on $20,000 until on or before June, 1992.

¶10. On first blush, this language may appear to be dispositive in favor of the Dorchak's position, given that said language does not contemplate interest on $195,000 of the debt being paid until 30 days after the beginning of occupancy, with an additional $20,000 being payable before July, 1992. However, one possible interpretation of the language, urged by the Executrix, is that the "from date" language indicates that the interest is to begin *accruing* on the date of the note, and is to be *paid* at some later date, in a manner which the note failed to specify.

¶11. Problematic for the Executrix, however, is that fact that the specific amounts set out in the payment provision are not consistent with interest accruing from the date of the note. The Executrix claims that this is merely an omission rather than an ambiguity, and that this Court should set a manner and time for the payment of accrued interest. This argument, however, is unconvincing. The payment provision of the contract clearly purports to set out the manner for the payment of the entire debt, and, as such, an ambiguity is created between the "9% per annum from date" language in the initial provision of the note and the later, more specific, payment provision.

¶12. In his Supplemental Opinion and Ruling, the Chancellor made brief note of this provision in the note, but he then looked to extrinsic evidence as to the parties intent, most notably with regard to an option contract which was drafted over one year prior to the date of the note. The Chancellor was without discretion to so consider extrinsic evidence, unless he first found that the promissory note was ambiguous

under the Parol Evidence Rule. The Chancellor's ruling makes no mention of a finding of ambiguity in the note prior to looking at extrinsic evidence, and as such, although well-reasoned, does not employ the proper legal analysis. Accordingly, it is for this Court to conduct a *de novo* review of the facts, taking into consideration the applicable considerations under the Parol Evidence Rule.

¶13. In conducting a *de novo* review, this Court must also be cognizant of the well-known canon of contract construction that ambiguities in a contract are to be construed against the party who drafted said contract. ***Pursue Energy Corp. v. Perkins,*** 558 So.2d 349 (Miss. 1990). This canon of contract construction is probably the Executrix's strongest point of argument in this case, given that this Court should be hesitant to grant the Dorchaks relief from a provision which was of their own making.

¶14. There are, however, also canons of contract construction which favor the Dorchaks, most notably the canon that specific clauses in a contract are to be given greater weight than general ones. See: ***Nicholas Acoustics & Specialty Co. v. H & M Const. Co. Inc.***, 695 F. 2d 839 (C.A. Miss. 1983). In addition, there is a substantial amount of extrinsic evidence in this case which leads to the conclusion that the parties did not contemplate the accrual of interest payments in the manner urged by the Executrix.

¶15. After conducting said *de novo* review, and considering the competing canons of contract construction, it is apparent that the judgment reached by the trial judge was correct, although his legal analysis may have been incomplete. The language of the promissory note is in fact ambiguous, and a consideration of the extrinsic evidence, as well as of the note itself, leads inescapably to the conclusion that the "from date" language, which forms the basis of this entire appeal, should not be interpreted in the manner which the Executrix asserts.

¶16. Of paramount importance in reaching this decision is the clear inference from the promissory note that the payments of the $20,000 plus interest, and of the $195,000 plus interest, were contemplated by the parties as being all of the payments due under said note. There is no evidence anywhere in the note, nor in any other extrinsic evidence in this case, that there were any additional payments contemplated between the parties beyond the very specific amounts set out in the note.

¶17. In negotiating a business transaction of this nature, the parties will inevitably place special importance on the clause which sets out the specific amounts to be paid. There is nothing in the language of the note to indicate that the specific payment clause was intended to be only a partial statement of the amounts to be paid. The Executrix would have us conclude that the parties somehow forgot to include a provision whereby the Dorchaks would have to pay tens of thousands of dollars in accruing interest. However, this is not a reasonable inference from the language of the note, even considering said note, as we must, in the light most favorable to the non-drafting party.

¶18. In addition to the language of the note itself, there is compelling extrinsic evidence that the payments set out in the specific payment clause of the note represent the true intent of the parties, as the Dorchaks claim. In his Supplemental Opinion and Ruling, the Chancellor gave very substantial weight to the fact that on May 19, 1988, the parties had executed an option contract which provided that:

"1. The purchase price for the property shall be . . . $ 225,000, which shall be paid on the exercise of this option as follows:

a. During the first three years purchasers will pay all taxes and insurance on dwelling and also assign

to the seller a life insurance policy in the amount of $ 225,000. During the first three years, these will be the only payments due on said real property."

¶19. This extrinsic evidence, which the Chancellor cites in support of his ruling, is very convincing evidence in favor of the Dorchaks. The option contract is somewhat inconsistent with the promissory note drafted over a year later, indicating that the promissory note was probably intended to supersede, rather than supplement, the option contract.

¶20. In spite of the differences between the option contract and the note, however, the option contract is nevertheless an important indicator of the parties' intent, given that said contract contemplated a three-year period in which only small, maintenance-type expenses would be paid. The option contract illustrates that the parties very likely did not contemplate that Dorchak would be liable for interest accruing on the note for the period in which he was serving in the Navy and thus unable to live on the property. This is logical, given that one would ordinarily place a lesser value on real property during a period in which one was unable to make use of it.

¶21. Taking into consideration all relevant factors, it is clear that the trial judge reached the correct conclusion in determining that interest payments on the note in question should not begin accruing on the date of the note. Accordingly, the judgment should be affirmed with regard to this point of error.

### B. WHETHER THE TRIAL COURT ERRED IN ALLOWING AND CONSIDERING THE TESTIMONY OF JOHN DORCHAK CONCERNING INTERPRETATION OF THE PROMISSORY NOTE, AND IN EFFECT OVERRULING APPELLANT'S OBJECTION AND MOTION TO STRIKE THAT TESTIMONY, AS BEING IN VIOLATION OF THE PAROL EVIDENCE RULE.

¶22. A second issue on appeal is whether the trial court erred in allowing John Dorchak to testify as to the intention of the parties with regard to the time at which interest payments on the note were to begin accruing. In making his ruling, the Chancellor considered the testimony of Dorchak, in which he testified that it was the intention of the parties that no interest payments were to accrue on the $195,000 portion of the note for three years, that is, until Dorchak was released from active duty service in the Navy. The Executrix argues on appeal that this testimony should have been excluded under the Parol Evidence Rule, given that the promissory note in question was clear and unambiguous and thus no extrinsic evidence, especially personal testimony of an interested party, should have been allowed to add to or contradict the writing.

¶23. The Executrix, however, did not object to the testimony of Dorchak on the grounds that it violated the Parol Evidence Rule at the time it was given, though she did object at the trial court level on a later date. This brings us to an issue which has not been squarely addressed by this Court, at least under a set of facts similar to these. Namely, the issue arises as to whether evidence which was not objected to originally may be later disregarded at the trial court level via a motion to exclude testimony if found to be in violation of the Parol Evidence Rule. The Executrix cites 81 *A.L.R. 3d* 249, 257 (1977) for the proposition that:

It is widely held or recognized in the modern cases, frequently on the ground that the parol evidence rule is one of substantive law rather than of evidence, that any evidence violative of the parol evidence rule, even though admitted without objection, must be disregarded.

¶24. The Dorchaks, on the other hand, cite the Mississippi case of *Service Fire Ins. Co. v. Craft,* 67

So.2d 874 (Miss. 1953), for the proposition that the Executrix's failure to object to Dorchak's testimony during trial should preclude the raising of the issue on appeal. A closer reading of *Craft*, however, indicates that said case held that a party could not "successfully urge for the *first time on appeal* (emphasis added) that the oral testimony contradicted the written instrument and the amount recited therein." *Craft*, 67 So.2d at 874. This holding in *Craft* is not applicable to the present case, given that the Executrix filed with the trial court on September 10, 1992 a motion to exclude the testimony of John Dorchak, and thus raised the objection prior to the beginning of the appellate process.

¶25. In the motion to exclude testimony, the Executrix objected to Dorchak's testimony on the grounds that consideration thereof would be violative of the Parol Evidence Rule. This objection was made subsequent to the Chancellor's original Findings and Rulings of the Court, which were issued in February of 1992, but it was made more than one month *prior* to the Chancellor's Supplemental Opinion and Ruling, which was issued on October 14, 1992. Thus, the Chancellor had notice of the objection of the Executrix to the testimony of Dorchak on grounds of the Parol Evidence Rule prior to making the ruling from which this appeal is taken.

¶26. On these facts, we distinguish the present case from *Craft*, given that *Craft* prohibits a party from raising for the *first time* on appeal an objection to evidence on grounds that it is in violation of the Parol Evidence Rule. This Court is thus left to decide the issue of whether or not evidence admitted without objection may later be contested at the trial court level, and, if found to be in violation thereof, disregarded upon proper motion. We are further left to decide whether the raising of said objection prior to the ruling from which the appeal as taken preserves said issue for appeal. We answer both questions in the affirmative.

¶27. Given that the Parol Evidence Rule is a rule of substantive law, a party should not lose the right to claim the benefit of said law merely because he failed to make a contemporaneous objection at the time the evidence was offered. We thus hold that, so long as evidence violative of the Parol Evidence Rule is properly objected to prior to the consideration of said evidence by the trier of fact, such evidence should properly be disregarded by said trier of fact in accordance with the law. In the case of a trial by jury, a limiting instruction instructing the jury to disregard said evidence should be granted by the trial judge on proper motion prior to the submission of the case to the jury. In the context of the present case, the objection to the testimony of Dorchak was made prior to the consideration of such testimony by the Chancellor as trier of fact in his Supplemental Opinion and Ruling and was thus timely.

¶28. At the same time, however, we let stand the holding in *Craft* that a party may not raise an objection to evidence on the grounds that it is violative of the Parol Evidence Rule for the first time on appeal. This Court also holds that the Executrix validly preserved the objection to the testimony of Dorchak for appeal by moving to exclude said testimony prior to the trial judge's ruling from which this appeal is taken.

### IV. CONCLUSION

¶29. Having held that the Chancellor should have considered the objections of the Executrix in his Supplemental Opinion and Ruling, this Court finds, as discussed earlier, that the promissory note in question is nevertheless ambiguous. As such, the Parol Evidence Rule does not preclude the consideration of extrinsic evidence such as the testimony of Dorchak to explain, but not contradict, the promissory note. The testimony of Dorchak was not in conflict with the promissory note, but rather served to explain the ambiguities therein. This Court thus finds that, although the Chancellor used an improper analysis in

considering the testimony of Dorchak without first having found that the promissory note in question was ambiguous, his eventual consideration of the testimony of Dorchak was nevertheless proper.

¶30. Accordingly, the judgment of the chancellor is affirmed.

¶31. **JUDGMENT IS AFFIRMED.**

**LEE, C.J., SULLIVAN, P.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**