# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60134
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
September 9, 2016

Lyle W. Cayce
Clerk

SMITHGROUP JJR, P.L.L.C.,

　　　　Plaintiff - Appellant

v.

FORREST GENERAL HOSPITAL,

　　　　Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:13-CV-150

Before DAVIS, SOUTHWICK, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:*

　　SmithGroup JJR, PLLC ("SmithGroup") appeals the district court's judgment, after a bench trial, rejecting its claim that Forrest General Hospital ("FGH") breached a contractual obligation to pay SmithGroup all of the fees it was owed for architectural design services. The sole issue SmithGroup raises on appeal is whether the district court erred by considering extrinsic evidence

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 16-60134

bearing on the meaning of the term "actual construction cost" in the parties' agreement. We affirm.

## I.

FGH hired SmithGroup to design and oversee the construction of a new hospital and an adjacent medical office building in Picayune, Mississippi. That relationship was memorialized in a contract executed in February 2010—several months before construction was to begin. This contract outlined architectural, engineering, and related "Basic Services" that SmithGroup would provide at each stage of the project's planning and construction, for which FGH would pay a fixed percentage of the construction cost. The agreement also contemplated the performance of "Additional Services," which would be compensated separately.

Most of SmithGroup's work was to be performed and paid for before construction or even the bidding process for a general contractor began. Accordingly, the contractual terms of how FGH would compensate SmithGroup for Basic Services—set forth at paragraph 11.1, and providing the crux of this appeal—contained estimated construction costs:

> The Basic Services for the Project shall be compensated at a rate of 6.0% of the construction costs. The construction costs shall be assumed to be $33 Million ($1,980,000.00 in fees) for the Hospital, Administrative Build-Out and Logistics Building and $5.2 Million ($312,000 in fees) for the Administrative Building Core-and-Shell until the actual construction cost is established. At that time, the Basic Services Fees shall be recalculated and locked in as a lump sum amount.

In May 2011—after the chosen contractor signed a contract, and after construction had begun—Travis Beatty, who works for a consulting firm hired by FGH, emailed SmithGroup a letter about the Basic Services Fees. That letter stated that per paragraph 11.1, those fees were to "be at an assumed rate of cost until the construction contract was executed. At that point, the fees

2

would be 'locked in' as a lump sum amount."  The letter's purpose was to "serve to convey a detailed breakdown of the accepted fees that are now established."  A SmithGroup vice president, Paul Tonti, responded asking how fees for design services regarding owner-supplied equipment would be handled.  Beatty replied that he would revise the letter to address that concern.  A few weeks later, Beatty sent a revised letter calculating the "Total Construction Contract Price" as $38,418,704.  We refer to this as the "bid cost."  Six percent of that total yields $2,305,122, and that is the amount FGH paid in Basic Services Fees.  Because of unanticipated design changes, however—some but not all of which were due to "errors or contractual violations by SmithGroup"—the total cost to complete the buildings was $40,799,669.  We call this the "completion cost."

SmithGroup filed this lawsuit in July 2013.  In Count I of its operative complaint, SmithGroup alleged that FGH breached the parties' contract by failing to pay six percent of the difference between the completion cost and the bid cost, which comes to $155,980.14 plus interest.  FGH maintained that it properly calculated and paid six percent of the "actual construction cost" based on the bid cost.  Neither party moved for summary judgment, and the case proceeded to a bench trial.

At trial, both parties presented extrinsic evidence concerning the meaning of paragraph 11.1.  For example, SmithGroup's counsel referred Tonti to key language in that paragraph and asked, "What did you understand that to mean when you read it?"  Tonti responded: "My interpretation of this is when the project is complete, because I don't know how you can achieve total actual construction costs until the project is complete and all those costs are rolled into a final construction number."  SmithGroup also elicited Tonti's testimony that he was not aware of any project with "an interim lock-in period."  The district court additionally heard testimony from Beatty, and from FGH's expert

No. 16-60134

Robert Luke, who testified that paragraph 11.1's verbiage about locking in a lump sum was "rather unique language" that referred to fixing fees "once an actual construction amount is known," which he distinguished from a "final construction amount or total construction amount." SmithGroup never objected during trial to the introduction or consideration of any evidence on parol evidence rule grounds.

After trial, the district court issued detailed written findings of fact and conclusions of law. Implicitly deeming the contract ambiguous and relying in part on extrinsic evidence, the court concluded "that the fee due SmithGroup should be based on the construction cost of $38,418,704.00, and that the proper amount has been paid by FGH." The district court therefore entered judgment in favor of FGH on Count I of SmithGroup's operative complaint.[1] SmithGroup timely appealed and now argues that the language "actual construction cost" unambiguously refers to the total amount FGH paid to finish the project, which could only be determined after all construction ended. Therefore, SmithGroup contends, the district court erred by considering evidence beyond the four corners of the contract in determining the meaning of paragraph 11.1.[2]

## II.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed *de novo*." *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2014) (quoting *One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 262 (5th Cir. 2011)). In a diversity case, "[w]e look to state law for rules governing contract interpretation." *ACS Constr. Co., Inc. of Miss. v.*

---

[1] The district court entered judgment in SmithGroup's favor for approximately $57,000 on a different breach-of-contract claim, and entered judgment in FGH's favor for approximately $310,000 on two counterclaims. None of these claims is at issue on appeal.

[2] SmithGroup does not argue that even if the district court properly considered extrinsic evidence, its factual conclusions were clearly erroneous.

*CGU*, 332 F.3d 885, 888 (5th Cir. 2003) (quoting *FDIC v. Firemen's Ins. Co. of Newark*, 109 F.3d 1084, 1087 (5th Cir. 1997)).  Here, that means that we apply Mississippi law "as interpreted by the state's highest court."  *Barfield v. Madison County*, 212 F.3d 269, 271–72 (5th Cir. 2000).

Mississippi courts analyze contracts using "a three-step analysis." *Epperson v. SOUTHBank*, 93 So.3d 10, 16 (Miss. 2012).  First, the court "must determine whether the contract is ambiguous, and if it is not, then it must be enforced as written," without consideration of parol evidence.  *Id.*  Determining whether a contract is ambiguous is a question of law.  *Tupelo Redev. Agency v. Abernathy*, 913 So. 2d 278, 283 (Miss. 2005).  If the court is unable to discern a clear meaning from this "four corners" inquiry, it should then "apply the discretionary 'canons' of contract construction."[3]  *Id.* at 284.  "Finally, if the contract continues to evade clarity as to the parties' intent, the court should consider extrinsic or parol evidence."  *Id.*  With these principles in mind, we turn to the case at hand.

## III.

SmithGroup's theory on appeal is that the contract at issue is unambiguous, so the district court erred by venturing beyond its four corners.  FGH, though, responds that SmithGroup waived that argument by failing to raise it in the trial court and by itself eliciting parol evidence.  Our usual rule is that "[a]n argument not raised before the district court cannot be asserted for the first time on appeal."  *XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 153 (5th Cir. 2008); *see also Liberty Combustion Co. v. Thoreson Sales Co.*, 322 F.2d 790, 791 (5th Cir. 1963) (holding that an appellant waived a parol evidence rule argument).  But in reply, SmithGroup

---

[3] SmithGroup does not argue that the district court should have applied any discretionary canon of construction, so we do not address any.

contends that it did raise its argument in the district court and that, in any event, under Mississippi law such an argument cannot be waived.

We treat the latter reply argument first, assuming without deciding that SmithGroup is correct that state law controls this waiver issue.[4]  In *Kelso v. McGowan*, the Mississippi Supreme Court rejected an argument that the appellant "waived the exclusion of parol evidence by failing to raise the issue at trial," stating: "This Court has clearly held . . . that since the parol evidence rule is substantive, it prevails even in the absence of objection."  604 So. 2d 726, 730 n.4 (Miss. 1992) (citing *Edrington v. Stephens*, 114 So. 387 (Miss. 1927)).  That statement from Mississippi's highest court, albeit in a footnote, would seem to defeat FGH's waiver argument.

More recently, however, the Mississippi Supreme Court reaffirmed "the holding in [*Service Fire Ins. Co. v. Craft*, 67 So. 2d 874 (Miss. 1953)] that a party may not raise an objection to evidence on the grounds that it is violative of the Parol Evidence Rule for the first time on appeal." *Estate of Parker v. Dorchak*, 673 So. 2d 1379, 1384 (Miss. 1996).  Although the court did not cite *Kelso* or *Edrington*, it noted that "the Parol Evidence Rule is a rule of substantive law"; for that reason, the court held that "a party should not lose the right to claim the benefit of said law merely because he failed to make a contemporaneous objection *at the time the evidence was offered*." *Id.* (emphasis added).  Rather, so long as a proper objection is raised "*prior to the consideration of said evidence by the trier of fact*, such evidence should properly be disregarded." *Id.* (emphasis added).  In *Dorchak*, a bench trial, a motion to exclude testimony about contractual intent was filed after the evidence was offered, but "prior to the consideration of such testimony by the Chancellor as

---

[4] *Cf. Harville Rose Serv. v. Kellogg Co.*, 448 F.2d 1346, 1349 (5th Cir. 1971) ("This court is bound in this diversity case to apply the parol evidence rule as the state court would.").

trier of fact"—so it was timely.  *Id.* at 1383–84.  But in the *Craft* case that *Dorchak* reaffirmed, no objection was ever made in the trial court to testimony that the appellant claimed contradicted the written instrument; therefore, that "testimony was before the jury for what it was worth," and the Supreme Court made clear that it could "rest [its] decision on that state of the record."  *Craft*, 67 So. 2d at 876.

More recently still, the Mississippi Supreme Court considered an argument raised for the first time on appeal that an "agreement [spoke] for itself and that parol evidence of an additional provision should not be considered."  *Chantey Music Publ'g, Inc. v. Malaco*, 915 So. 2d 1052, 1060 (Miss. 2005).  Citing the principle that a trial court cannot be held to have erred on a matter not presented to it, the high court held that the parol evidence issue was not properly before it.  *Id.*

Thus, the more recent cases show that the present state of Mississippi law does not allow a parol evidence argument such as SmithGroup's to be raised for the first time on appeal.  *See Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 464 n.5 (5th Cir. 2016) (noting that federal courts are *Erie*-bound on state-law questions by the state supreme court's most recent authority); *Broussard v. S. Pac. Transp. Co.*, 625 F.2d 1242, 1245 n.3 (5th Cir. 1980) (similar).  Bolstering this conclusion, the en banc Court of Appeals of Mississippi recently relied on *Dorchak* in holding that because an appellant never raised a parol evidence rule objection in the trial court, he could not do so on appeal.  *DeJean v. DeJean*, 982 So. 2d 443, 448–49 (Miss. Ct. App. 2007) (en banc).[5]  Thus, SmithGroup waived this argument unless it objected to the consideration of parol evidence before the trial court made its decision.

---

[5] SmithGroup cites *Century 21 Deep South Prop., Ltd. v. Keys*, 652 So. 2d 707 (Miss. 1995), for the proposition that an objection to the consideration of parol evidence need not be made in the trial court to be preserved for appeal.  But *Keys* does not support that rule.

SmithGroup does not dispute that it never objected at trial to the admission or consideration of extrinsic evidence, but does argue that it raised the issue in its post-trial proposed findings of fact and conclusions of law. SmithGroup points to its citation of case law for Mississippi principles of contract interpretation, including that a court "should first examine the four corners of the contract to determine how to interpret it" and "accept the plain meaning of a contract as the intent of the parties where no ambiguity exists." SmithGroup's filing also stated: "If found ambiguous, the subsequent interpretation of the contract is a finding of fact. Ambiguity analysis, unlike affirmative defense analysis, is by its very nature a necessary step in the examination of every contract." After these case citations, SmithGroup summarily concluded that there was "no doubt as to when total cost for construction is achieved," submitting that it "ha[d] offered evidence and testimony in support of its claim for fees which is irrefutable."

This was not enough to "properly object[]" to consideration of the parol evidence elicited by both parties. *See Dorchak*, 673 So. 2d at 1384. The highlighted statements were set forth as boilerplate legal rules in the form of case citations, not arguments tied to this dispute. And "[c]iting cases that may contain a useful argument is simply inadequate to preserve that argument for appeal; 'to be preserved, an argument must be pressed, and not merely intimated.'" *Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.)*,

---

Instead, the *Keys* court rejected an argument that the trial court erred in finding parts of a contract to be ambiguous, even though the defendant-appellee had not pleaded as an "affirmative defense" that the contract was ambiguous. *Id.* at 716–17. The court reasoned that "[t]he clarity of a contract must always be considered before a contract may be enforced, whereas the consideration of non-plead affirmative defenses is not required." *Id.* at 717. Tellingly, neither the Mississippi Supreme Court in *Dorchak* or *Chantey Music*, nor the Court of Appeals in *DeJean*, found *Keys* relevant when deciding more similar issues. Neither do we. The same goes for *Rotenberry v. Hooker*, 864 So. 2d 266 (Miss. 2003), which SmithGroup cites essentially for its recapitulation of *Keys*.

6 F.3d 1119, 1128 (5th Cir. 1993) (quoting *Hays v. Sony Corp.*, 847 F.2d 412, 420 (7th Cir. 1988)), *abrogated on other grounds by Tex. Truck Ins. Agency, Inc. v. Cure (In re Dunham)*, 110 F.3d 286 (5th Cir. 1997). What's more, those citations included the instruction that a fact finder should interpret a contract as a factual matter if the contract is held ambiguous—which is what the district court did. Nowhere did SmithGroup make an actual argument that extrinsic evidence of paragraph 11.1's meaning should not be considered, or even that the provision is unambiguous. Finally, even in the post-trial briefing on which it now relies, SmithGroup cited expert testimony in support of its argument about paragraph 11.1.[6] Thus, SmithGroup never put the district judge on notice of any argument that extrinsic evidence should not be considered. *See Chantey Music*, 915 So. 2d at 1060; *see also XL Specialty*, 513 F.3d at 153. Accordingly, we will not consider that argument on appeal.

## IV.

SmithGroup failed to preserve for appeal its argument that because the relevant contractual term is unambiguous, the district court erred by considering extrinsic evidence in determining its meaning. Because SmithGroup argues no other ground for reversal, we AFFIRM the district court's judgment.

---

[6] We do not mean to suggest that a litigant cannot argue that a contract's language is unambiguous and consideration of parol evidence therefore inappropriate, but rely in the alternative on extrinsic evidence. Here, SmithGroup did not present such alternative arguments to the district court.