MYERS, P.J.,
for the Court.
¶ 1. Julia Mae DeJean and her brother, Patrick DeJean, jointly owned a non-negotiable Hancock Bank certificate of deposit (CD No. 16314), with rights of survivor- *446 ship. CD No. 16314 was stamped “nonnegotiable, non-transferable” and was payable “upon presentation of this certificate properly endorsed.” On or about January 18, 2001, Julia Mae spoke with a teller at Hancock Bank and instructed Hancock Bank to redeem CD No. 16314 and with the proceeds, reissue a new CD (CD No. 17178) in the name of herself or her sister-in-law, Christine DeJean, and her nephew, Heywood DeJean. However, during the redemption process, Julia Mae learned that the old CD was due for an interest accrual to occur on January 23, 2001, and that designating an effective date of redemption prior to this accrual would result in a loss of an unspecified amount of interest. At the request of Julia Mae, the issuing of the new CD was delayed by Hancock Bank until January 23, 2001, for the sake of avoiding interest penalties and maximizing the interest accrual. The old CD, No. 16314, remained in the possession of Hancock Bank until the new CD, No. 17178, was issued on January 23, 2001, to “Julia Mae DeJean or Christine DeJean and Heywood DeJean.” In the meantime, after Julia Mae ordered the issuance of the new CD, but before the new CD was issued, Julia Mae died on January 20, 2001.
¶ 2. Following Julia Mae’s death, Patrick DeJean petitioned for a declaratory judgment in which he sought to be declared the sole owner of a certain certificate of deposit (CD) held at Hancock Bank. In his petition, Patrick asserted, amongst several arguments that are not at issue in this appeal, that Hancock Bank was in breach of contract for redeeming the CD without a proper endorsement. Patrick sought the return of the funds transferred into the new CD, owned by Christine and Heywood. The matter went to trial in the Chancery Court of Jackson County on October 18, 2004, and a judgment was entered in favor of Christine and Heywood, as well as Hancock Bank. The chancellor found, pursuant to Julia Mae’s post-dating instructions and agreement with Hancock Bank, that the CD had been properly redeemed prior to Julia Mae DeJean’s death and awarded the proceeds of the CD to Christine and Heywood.
¶ 3. The chancellor specifically found that no endorsement was required for Julia Mae to transfer the CD because it was a non-negotiable instrument and that Julia Mae could unilaterally order the redemption of the CD without endorsement, despite the language appearing on the face of the CD purportedly requiring endorsement. On appeal, Patrick argues the chancellor erred in (1) finding that the CD was redeemed before Julia Mae’s death, (2) applying an erroneous legal standard in holding that a CD can be partially redeemed, (3) neglecting to apply the “four corners” doctrine to the CD, (4) failing to apply Mississippi Code Annotated section 81-5-63 (Rev.2001), (5) failing to grant an equitable division of the CD, and (6) finding that the CD was sufficiently “endorsed.” Christine, Heywood and Hancock Bank argue that Patrick failed to raise issues concerning the timing of the redemption of the CD at trial and thus this issue is proeedurally barred on appeal. Further, Christine, Heywood and Hancock Bank contend that no endorsement was required because the CD was a non-negotiable instrument. Finding no error, we affirm the decision of the chancellor.
STANDARD OF REVIEW
¶ 4. “The findings of a chancellor will not be disturbed when supported by substantial evidence unless there was manifest error or an improper legal standard was applied.” In re Estate of Temple, 780 So.2d 639, 642(¶ 15) (Miss.2001). However, we review questions of law de novo. Ladner v. Necaise, 771 So.2d 353, 355(¶ 3) (Miss.2000).
*447 DISCUSSION
I. WHETHER THE CHANCELLOR COMMITTED MANIFEST ERROR IN FINDING THAT CERTIFICATE OF DEPOSIT NO. 16314 WAS REDEEMED PRIOR TO JULIA MAE DEJEAN’S DEATH
¶ 5. Patrick raises the issue of the timing of the redemption of the original CD in his first argument on appeal. Essentially, Patrick asserts that Julia Mae did not withdraw the proceeds of the old CD prior to her death and argues that because redemption did not occur before her death, he possesses the right of surviv-orship to the CD. Christine, Heywood and Hancock Bank argue that Patrick brings the issue regarding the timing of the redemption for the first time on appeal and, thus, is procedurally barred from asserting this error, as the matter was never litigated in the court below. See Bender v. North Meridian Mobile Home Park, 636 So.2d 385, 389 (Miss.1994). As the focal point of Patrick’s case in the court below centered upon whether the original CD was properly redeemed before Julia Mae’s death, we do not find that Patrick is procedurally barred; however, Patrick’s claim fails on the merits.
¶ 6. While the CD was, in this case, made non-negotiable by placement of a legend on its face reading, “non-negotiable,” and it is recognized that the provisions of the Uniform Commercial Code (UCC) do not apply, its passages are, nevertheless, persuasive support for the chancellor’s decision regarding the issuance of the new CD.[1] The UCC, as adopted by Mississippi Code Annotated, provides that postdating a negotiable instrument is, statutorily, an accepted practice. See Miss. Code Ann. § 75-3-113(a) (providing, specifically, that “[a]n instrument may be antedated or ■ postdated”). The statute provides that when postdating occurs, the date merely determines the time of payment, if the instrument is payable at a fixed period after that date. The date of the instrument’s issuance is not affected. The argument regarding a non-negotiable instrument then follows: If a negotiable instrument may be properly postdated, then what prohibits the postdating of a non-negotiable instrument? Julia Mae instructed Hancock Bank on or about January 18, 2001, to postdate the redemption of the old CD and to create the new CD on January 23, 2001. The postdating of the issuance of the new CD until January 23, 2001 did not affect the date of issuance of January 18, 2001. The chancellor found that the foregoing practice was an acceptable process of redemption, and we agree. Thus, Hancock Bank’s payment of the proceeds of the reissued CD, No. 17178, to Christine and Heywood was proper.[2] Ac *448 cordingly, we find no error and the decision of the chancellor is affirmed.
II. WHETHER THE CHANCELLOR APPLIED AN ERRONEOUS LEGAL STANDARD IN HOLDING THAT, IN EFFECT, A CERTIFICATE OF DEPOSIT COULD BE PARTIALLY REDEEMED
¶ 7. Patrick contends that the chancellor relied upon an' erroneous legal standard in deciding that Julia Mae redeemed the original CD on January 18, 2001. Similar to his previous issue, Patrick argues, that the chancellor incorrectly found that the old CD was properly redeemed on January 18, 2001, because this finding created a lapse of time before the issuance of the subsequently issued CD No. 17178 on January 23, 2001. The argument progresses that the lapse of time between the alleged redemption date and the date of the new issuance created a period of three to four business days that accrued interest, for which is unaccounted. He asserts, therefore, .that • because of this lapse of interest, the CD was only partially redeemed and seeks reversal based upon the chancellor’s use of an erroneous legal standard. However, we note that Patrick fails to provide this Court with any citations to case law providing the legal standard that he argues should have been employed.
¶ 8. The chancellor found that the redemption of the original CD and the issuance of the new CD were two separate and distinct transactions. The entire face value and the accompanying accrued interest were transferred from the original CD to the new CD when the redemption and new issuance transpired. We cannot find any support in the record or applicable case law to support Patrick’s contention that the chancellor allowed the original CD to be partially redeemed. Thus, we hold that the chancery court correctly found that the original CD was properly redeemed on January 18, 2001, to become effective on January 23, 2001.
III. WHETHER THE CHANCELLOR NEGLECTED TO APPLY THE “FOUR CORNERS” DOCTRINE TO CERTIFICATE OF DEPOSIT NO. 16314
¶ 9. Patrick argues that the chancellor erred in considering the testimony of the bank teller in making its decision because accepting such testimony was in violation of the parol evidence rule. He asserts that the chancellor erroneously relied upon the testimony of the bank teller in deciding that Julia Mae’s intent was to create a new CD with proceeds from the old CD. Christine, Heywood and Hancock Bank argue that this Court is precluded from hearing such an argument because Patrick failed to preserve the issue of par-ol evidence by objecting at trial to the introduction of the teller’s testimony.
¶ 10. The parol evidence rule prohibits the introduction of outside evidence where a document is clear, definite and unambiguous on its face. In re Will of Roland, 920 So.2d 539, 541(111) (Miss. Ct.App.2006) (citing Estate of Blount v. Papps, 611 So.2d 862, 867 (1993)). A trial court begins its review with looking first within the “four corners” of the document at issue. If there exists no ambiguity within the writing, then further analysis is proscribed. In re Will of Roland, 920 So.2d at 541(111).
111. Our supreme court has held that a party may not raise an objection to the introduction of evidence on the grounds that it is violative of the parol evidence rule for the first time on appeal. Estate of Parker v. Dorchak, 673 So.2d 1379, 1384 (Miss.1996). However, raising an objection to the admission of parol evidence prior to the judge or jury’s decision *449 preserves the issue for appeal. Id. Such an objection need not be made contemporaneously, but rather sometime before the judge or jury considers the evidence in order to make its determination. Id.
¶ 12. Prior to this appeal, Patrick never raised an objection to the introduction of the bank teller’s testimony. Therefore, this Court is without authority to consider Patrick’s argument regarding the introduction of evidence in violation of the parol evidence rule. We find this issue to be without merit.
IV. WHETHER THE CHANCELLOR FAILED TO APPLY MISSISSIPPI CODE ANNOTATED SECTION 81-5-63
¶ 13. Patrick asserts that the chancellor “defeated the statutory mandate” of Mississippi Code Annotated section 81-5-63 (Rev.2001) in finding that Julia Mae was capable of directing the cash proceeds of the old CD to be used to purchase the new CD prior to her death. However, Patrick does not provide any further argument regarding the issue. Mississippi Code Annotated section 81 — 5— 63 provides in pertinent part:
When a deposit has. been made or is hereafter made in the name of two (2) or more persons, payable to any one (1) of those persons, or payable to any one (1) of those persons or the survivor, or payable to any one (1) of those persons or to the survivor or survivors, or payable to the persons as joint tenants, the deposit or any part thereof or interest or dividends thereon may be paid to any one (1) of those persons, without liability whether one or more of those persons is living or not, and the receipt of acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made. The making of a deposit in that form, or the making of additions thereto, shall create a presumption in any action or proceeding to which either the bank or any survivor is a party of the intention of all the persons named on the deposit to vest title to the deposit and the additions thereto and all interest or dividends thereon in the survivor or survivors.
This section creates a right of survivorship in certain deposits, including certificates of deposit, but also insulates banking institutions with statutory immunity in case a deposit made in the name of two or more persons is withdrawn by one of the named parties. It is undisputed that because the original CD was in the name of “Julie Mae DeJean or Patrick DeJean,” the CD was jointly owned, and either could withdraw the funds. Julia Mae withdrew the funds and acquired a new CD with the proceeds. Hancock Bank cannot be held liable for Julia Mae’s exercise of her right to withdraw the funds. We find the chancellor correctly applied Mississippi Code Annotated section 81-5-63 so as to relieve Hancock Bank from liability.
V. WHETHER THE CHANCELLOR PROPERLY FAILED TO GRANT AN EQUITABLE DIVISION OF THE CERTIFICATE OF DEPOSIT BASED UPON THE SOURCE OF FUNDING OF THE CERTIFICATE OF DEPOSIT
¶ 14. Patrick requests that he be recognized as half-owner of the principal and interest of the new CD because the origination of the funding of the original CD was a family inheritance. The chancellor refused to redistribute the proceeds from the redemption of the CD, finding that Julia Mae could, at any time, unilaterally order the redemption of the original CD without consulting Patrick. When an account is held jointly in the name of one depositor or another, “each depositor is *450 allowed to treat joint property as if it were entirely his own.” Drummonds v. Drummonds, 248 Miss. 25, 31,156 So.2d 819, 821 (1963). We find that equitable division of the funds from the CD is not warranted, as the redemption of the original CD was properly executed by one of the lawful joint owners. This issue is without merit.
VI. WHETHER THERE WAS A SUFFICIENT “ENDORSEMENT” OF CERTIFICATE OF DEPOSIT NO. 16134
¶ 15. Patrick argues that the chancellor erred in finding that the original CD did not have to be endorsed before Julia Mae could order the redemption of the proceeds. While Patrick recognizes that the CD was non-negotiable and hence outside of the purview of UCC Article 3, he urges us to find that the CD contained an endorsement requirement. In support of his position, he points out that the CD bore the language that the CD was payable “upon presentation of this certificate properly endorsed.” Patrick argues that because the CD bore an endorsement requirement, and Julia Mae failed to physically appear at Hancock Bank and endorse the CD before redemption, that the CD was improperly redeemed by Hancock Bank. Christine, Heywood and Hancock Bank counter Patrick’s argument, asserting that Hancock Bank could and did waive the endorsement requirement and, alternately, that a bank officer’s notation on the endorsement panel of the CD was tantamount to an endorsement by Julia Mae.
¶ 16. Endorsements are a requirement for the transfer of a negotiable instrument and for proper negotiation under Article 3. Miss.Code Ann. § 75-3-201. However, as stated supra, Article 3 does not apply to a non-negotiable instrument. Miss.Code Ann. § 75-3-102(a) (Rev.2000). The chancellor found, and we agree, that Hancock Bank’s endorsement requirement appearing on the CD at issue was an internal banking requirement designed to protect Hancock Bank. This type of clause appearing on a non-negotiable certificate of deposit is placed for the purpose of mitigating the risk that the issuing bank may make payment to someone not entitled to payment. The clauses are not meant to protect a depositor against withdrawals by a co-depositor and may be waived by the bank. The chancellor held that Hancock Bank waived its own endorsement requirement. No endorsement of the CD was required in order to disburse the proceeds, as the CD was not a negotiable instrument controlled pursuant to Article 3. Therefore, we find this issue to be without merit.
¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., CHANDLER AND ISHEE, JJ„ CONCUR. ROBERTS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, GRIFFIS, AND BARNES, JJ. CARLTON, J., NOT PARTICIPATING.

. UCC Article 3 does not apply to a nonnegotiable instrument. Miss.Code Ann. § 75-3-102(a) (Rev.2000). Thus, the redemption of the CD is governed by rules other than those contained in Article 3, namely contract law. Id.; Miss.Code Ann. § 75-3-104(d) (Rev. 2002).

. We note that the dissent suggests that the reissuing of the new CD in the name of Julia Mae or Christine and Heywood is prohibited by the nuncupative will statute of Mississippi Code Annotated section 91-5-15 (Rev.2004). Mississippi Code Annotated section 91-5-15 prohibits a decedent’s oral devise of property made during extremis, at least so near death that he did not have reasonable time and opportunity to make written will, without a requisite number of witnesses present. Julia Mae, in ordering the reissuance of the new CD, retained joint ownership with Christine and Heywood, rather than completely divested her ownership of the CD to Christine and Heywood. Thus, the reissuance of the CD cannot be considered a testamentary devise as contemplated by the prohibitions found in the nuncupative will statute.