LEE, C.J.,
for the Court:
FACTS AND PROCEDURAL HISTORY
¶ 1. This case involves four certificates of deposit (CDs) funded by Carolyn Ep-person’s father, C.K. Rickman. The CDs were opened at SOUTHBank in Corinth, Mississippi, in 1993. The CDs were held by C.K. and his wife, Juanita, as trustees for Carolyn Epperson and Randy Thompson. Epperson is C.K.’s daughter and Juanita’s stepdaughter. Randy is C.K. and Juanita’s biological son. C.K. died in 1999. In 2000, the beneficiaries of the CDs retitled the CDs in the name of “Juanita Rickman or Carolyn Epperson or Randy Thompson.” Juanita was given possession of the actual certificates signed by herself, Epperson, and Randy.
¶ 2. On February 15, 2005, Epperson went to SOUTHBank to check the balances of the CDs. The balances were shown in full. She returned again on October 21, 2005. She was notified that on March 8, 2005, one of the CDs had been cashed. Epperson asked a bank associate, *28 Margie Franks, to withdraw the funds from the remaining CDs. Franks told Ep-person that she could not withdraw the money without the original certificates. Epperson did not have the original certificates and did not pursue the matter further. On February 17, 2006, Juanita and Randy went to SOUTHBank and consolidated the remaining three CDs into a new CD. Epperson’s name was not on the new CD. The new CD was titled in the name of “Juanita Rickman or Randy Thompson or Doris Thompson.”
¶ 3. Epperson filed a complaint against SOUTHBank in the Circuit Court of Al-corn County alleging that the bank had breached its duty to her by refusing to allow her to withdraw the funds from the CDs. As damages, she requested the full amount of the consolidated CD, interest, punitive damages, and attorney’s fees.
¶ 4. SOUTHBank filed a motion for summary judgment, and Epperson filed a cross-motion for summary judgment. The parties stipulated that there were no genuine issues of material fact in dispute; thus, the only issue before the trial court was the contractual interpretation of the CDs. SOUTHBank argued in its motion that the plain language of the CDs required proper documentation for withdrawal. Epperson argued that the language did not require her to surrender the original CD in order to receive the funds. The trial court granted summary judgment in favor of SOUTHBank, finding that Epperson was required to present the original certificates for withdrawal.
¶ 5. Aggrieved, Epperson now appeals, asserting that summary judgment was erroneously granted in favor of SOUTH-Bank.
STANDARD OF REVIEW
¶ 6. In reviewing a lower court’s grant of summary judgment, this Court employs a de novo standard of review. Anglado v. Leaf River Forest Prods., 716 So.2d 543, 547 (¶ 13) (Miss.1998). Summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(e). This Court will consider all of the evidence before the lower court in the light most favorable to the non-moving party. Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 794 (Miss.1995). The party opposing the motion “may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e).
DISCUSSION

Ownership of the CDs

¶ 7. Epperson argues that SOUTH-Bank erroneously refused her request to withdraw three CDs because she did not possess the original certificates. Epper-son asserts that there was no language in her agreement with SOUTHBank that required possession of the certificates for withdrawal. She asserts that the requirement that she submit the original CDs was not logical since the CDs were held by three individuals, and it was impossible for all three parties to possess the original CDs at the same time.
¶ 8. It is undisputed that the CDs were owned jointly by “Juanita Rickman or Carolyn Epperson or Randy Thompson.” However, there was some confusion on behalf of Franks, the bank associate with whom Epperson had spoken, as to which party was the “real owner” of the CDs. *29 Franks responded as follows when asked a hypothetical question about the procedure for withdrawal of a lost CD:
A. Well, we do have a form for lost CD’s.
Q. Okay.
A. I mean, [Epperson] couldn’t have come in here and said we’ve lost these CD’s.
Q. Okay.
A. The real owner of it would have to come in and say they are lost.
Q. Okay. And in the case of the CD’s that Mrs. Epperson was asking about on October the 21st of 2005,1 mean, in that case Juanita Rickman was the real owner of those CD’s?
A. Right.
Q. Okay. And based on that she would have been the only person who could have gotten that money?
A. Right.
¶ 9. Franks was mistaken about Juanita being the only “real owner” of the CDs. This Court has stated that “[w]hen an account is held jointly in the name of one depositor or another, ‘each depositor is allowed to treat joint property as if it were entirely his own.’ ” DeJean v. DeJean, 982 So.2d 443, 449-50 (¶ 14) (Miss.Ct.App.2007) (quoting Drummonds v. Drummonds, 248 Miss. 25, 31,156 So.2d 819, 821 (1963)). This is important because Mississippi Code Annotated section 81-5-63(1) (Supp.2010) “insulates banking institutions with statutory immunity in case a deposit made in the name of two or more persons is withdrawn by one of the named parties.” Id. at 449 (¶ 13). Section 81-5-63(1) states:
When a deposit has been made or is hereafter made in the name of two (2) or more persons, payable to any one (1) of those persons, ... the deposit or any part thereof or interest or dividends thereon may be paid to any one (1) of those persons, without liability whether one or more of those persons is living or not, and the receipt of acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made....
¶ 10. The CDs stated the owners were “Juanita Rickman or Carolyn Epperson or Randy Thompson.” Thus, each of them was a real owner and should have been treated as such. Because of the word “or” between the parties’ names, each was allowed to treat the CDs as if they were entirely his or her own. SOUTHBank should have treated the three parties equally and not have favored Juanita. Ep-person had an equal right to withdraw the CDs.

Interpretation of the Contractual Language

¶ 11. CDs are non-negotiable, non-transferable instruments. Because Article 3 of the Uniform Commercial Code does not apply to non-negotiable instruments, “the redemption of the CD[s] [are] governed by rules other than those contained in Article 3, namely contract law.” DeJean, 982 So.2d at 447 n. 1. The standard of review for interpretation of a contract is de novo. Cherokee Ins. Co. v. Babin, 37 So.3d 45, 48 (¶ 8) (Miss.2010). An appellate court “first look[s] to the express wording of the contract itself, looking at the contract as a whole, to the exclusion of extrinsic or parol evidence.” Id. (citing Warwick v. Gautier Util. Dist, 738 So.2d 212, 215 (¶ 8) (Miss.1999)). The “ ‘canons’ of contract construction” are applied “[i]f the parties’ intent is unclear _” Id. (citing HeartSouth, PLLC v. Boyd, 865 So.2d 1095, 1105 (¶26) (Miss.2003)). The court may only consider extrinsic evidence if the meaning remains ambiguous. Id. (citing HeartSouth, 865 So.2d at 1105 (¶ 26)).
*30 ¶ 12. The four CDs purchased in 1998 by C.K. and Juanita stated that in order to make a withdrawal prior to maturity, the owner “must properly endorse-the certifícate and present it to us [ (SOUTH-Bank) ]....” However, the CDs opened in 2000 do not contain this language. When the CDs were renamed in 2000, Epperson, Juanita, and Randy signed a new document entitled “Consumer Account Agreement.” This document was used uniformly for all of SOUTHBank’s accounts, including checking and savings accounts. Under a heading entitled “withdrawals,” the Consumer Account Agreement states:
Unless otherwise clearly indicated on page 1, any one of you who signs this form including authorized signers, may withdraw or transfer all or any part of the account balance at any time on forms approved by us. ... We reserve the right to refuse any withdrawal or transfer request which is attempted by any method not specifically permitted .... Withdrawals from a time deposit prior to maturity or prior to the expiration of any notice period may be restricted and may be subject to penalty....
(Emphasis added).
¶ 13. The trial court found that the language “on forms approved by us” indicated that the original CD must be presented for the withdrawal of the CDs prior to matui’ity. The trial court reasoned that the “forms” referred to in the agreement were the CDs themselves.
¶ 14. SOUTHBank asserts that it was standard banking practice to require the presentation of CDs for withdrawal prior to maturity. But we note that at some point between 1993 and 2000, SOUTH-Bank changed its agreements by omitting the requirement that a CD holder “must properly endorse the certificate and present it to us....” SOUTHBank argues that despite the omission of the foregoing language in the 2000 CD, its internal requirement that the original CD be presented to the bank never changed. It appears that SOUTHBank is trying to enforce contractual language that is no longer in existence and not applicable to the 2000 contract among the parties.
¶ 15. Looking to the express wording of the contract, there is no language requiring the presentation of the original CDs for withdrawal of funds at any time. The language from the 1993 CDs requiring endorsement and presentation of the original certificates was omitted from the 2000 CDs. This type of clause is not inherent under the UCC but is typically added by a bank to mitigate the risk of making payment to someone not entitled to payment. DeJean, 982 So.2d at 450 (¶ 16). While endorsements are required for the transfer of a negotiable instrument under Article 3, Article 3 does not apply to a non-negotiable instrument, such as a CD. Miss.Code Ann. § 75-3-102(a) (Rev.2002). Thus, there is no legal requirement that a CD be endorsed or presented.
¶ 16. At her deposition, Franks was asked why Epperson was not allowed to withdraw the CDs. Franks stated that the original certificates must be presented pursuant to SOUTHBank’s policy. When asked where this policy was found, she responded, “I really don’t know. It could have been on the back of the CD — I mean, on the signature card.” The following exchange then occurred:
Q. How do you deal with a situation where the person who has the CD won’t let the person who doesn’t have the CD get the CD?
A. That’s between them, I guess, if they don’t want to give it to them.
Q. Okay.
*31 A. That doesn’t have anything to do with us.
¶ 17. Apparently, Franks was unaware that SOUTHBank’s policy requiring presentation of the certificates had changed. Franks had been an employee of the bank for forty-six years. It is likely she was following a policy that she assumed was still in place in the bank’s documents.
¶ 18. Viewing the documents as a whole, we can find no specific language that instructs the customer on how to redeem the CDs. The phrase “on forms approved by us” does not indicate on its face that the original CDs must be presented or signed. It is well settled that this Court must construe any ambiguities in a contract against the drafter. Pursue Energy Corp. v. Perkins, 558 So.2d 349, 352-53 (Miss.1990). Absent specific language requiring that the original CDs be presented for withdrawal, we must find in favor of Epperson.
¶ 19. On October 21, 2005, when Epper-son requested to withdraw the three remaining CDs from SOUTHBank, their values were $84,078.91, $84,078.91, and $65,025.63. We award Epperson the total of these three CDs, which is $233,183.45. Accordingly, the judgment of the trial court is reversed and rendered in favor of Epperson in the amount of $233,183.45 plus interest at the legal rate of eight percent per annum from October 21, 2005. Miss.Code Ann. §§ 75-17-1(1) (Rev.2009) and 75-17-7 (Rev.2009).
¶ 20. THE JUDGMENT OF THE AL-CORN COUNTY CIRCUIT COURT IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
IRVING, P.J., MYERS, BARNES, ISHEE, MAXWELL AND RUSSELL, JJ., CONCUR. ROBERTS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, P.J., AND CARLTON, J.