# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00360-COA

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF JAMES OLDRUM SMITH, JR., DECEASED: JAMES OLDRUM SMITH, III AND PATRICK SMITH | APPELLANTS |

v.

| | |
|---|---|
| LELA SMITH FLOWERS AND LYN SMITH | APPELLEES |

| | |
|---|---|
| DATE OF JUDGMENT: | 01/16/2015 |
| TRIAL JUDGE: | HON. HOLLIS MCGEHEE |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | WILLIAM R. STRIEBECK |
| | DAVID RYAN LYNCH |
| ATTORNEYS FOR APPELLEES: | DAVID M. SESSUMS |
| | RONALD C. MORTON |
| | ROBERT ANTHONY FISCHER |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| TRIAL COURT DISPOSITION: | MOTION FOR CONSTRUCTION OF CODICIL GRANTED IN FAVOR OF APPELLEES |
| DISPOSITION: | REVERSED AND REMANDED: 10/04/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES AND CARLTON, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     This appeal comes from the probate of the estate of James Oldrum Smith Jr.  As part of the probate of the estate, a disputed issue arose as to the interpretation of a codicil that would impact the transfer of stock owned by the decedent in three corporations.  The Warren County Chancery Court determined that the codicil was not ambiguous and did not allow for the consideration of extrinsic evidence.  The appellants disagree and filed a timely appeal.

We find reversible error and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY

¶2.     James Oldrum Smith Jr. ("Big J.O.") was a successful businessman who lived in Warren County, Mississippi. He died on August 24, 2006. At the time of his death, he was survived by three children: James Oldrum Smith III ("Little J.O."), Patrick Raymond Smith, and Lela Smith Flowers. Big J.O. also had one child that predeceased him, Jinx Peterson Smith. Jinx left three surviving children: Jinx Peterson Smith Jr., Christopher Stanton Smith, and Patricia Stafford Smith.

¶3.     On September 8, 2006, the Estate of J.O. Smith Jr. was opened in the chancery court. The last will and testament of Big J.O., dated November 10, 1987, was admitted to probate. In addition, the three codicils executed by Big J.O. were admitted to probate: codicil 1 dated November 8, 1988; codicil 2 dated July 27, 2005; and codicil 3 dated December 12, 2005. At the time in controversy here, Harry Kenneth Lefoldt Jr. was the administrator of the estate.

¶4.     The controversy before this Court concerns the interpretation of codicil 3. Big J.O. did not obtain the assistance of a lawyer in the preparation or execution of codicil 3. It was titled "Codicil #3 to the Will of J.O. Smith, Jr. which Will is dated November 10, 1987." It read:

> J.O. Smith, III will receive in the event of my death 41% of the shares that I own in Big River Shipbuilders, Inc., Vicksburg Plant Food, Inc. and Yazoo River Towing, Inc.
>
> Patrick Smith and Lela Smith Flowers will receive 39% of the stock that I own in Big River Shipbuilders, Inc. and Vicksburg Plant Food; and 29% of the stock of Yazoo River Towing, Inc. divided equally.

2

¶5. Big J.O. died on August 24, 2006. As of the date of his death, these companies had the following shareholder ownership:

| | Shareholder | Shares | % Owned |
|---|---|---|---|
| *Big River Shipbuilders* | Estate of J.O. Smith Jr. | 80 | 80% |
| | J.O. Smith III | 10 | 10% |
| | Jinx Smith (Estate) | 10 | 10% |
| *Vicksburg Plant Food* | Estate of J.O. Smith Jr. | 800 | 80% |
| | J.O. Smith III | 100 | 10% |
| | Jinx Smith (Estate) | 100 | 10% |
| *Yazoo River Towing* | Estate of J.O. Smith Jr. | 3,483 | 69% |
| | J.O. Smith III | 500 | 10% |
| | Jinx Smith (Estate) | 500 | 10% |
| | Teresia White | 517 | 11% |

¶6. On December 2, 2012, Lyn Smith, Jinx's widow, filed a motion for construction of the codicil. This motion sought a determination of whether the codicil constituted a direct bequest, or whether the assets listed in the codicil went to the residual estate. On September 7, 2011, the chancellor ruled that the codicil was unambiguous and constituted a direct bequest of the assets to the named beneficiaries.

¶7. On August 13, 2014, Little J.O. filed a "Motion for Construction of 3[rd] Codicil."[1] In this motion, Little J.O. argued that, in codicil 3, Big J.O. intended for Little J.O. to receive 41% *of the shares* of each corporation and not just 40% *of the shares owned* by Big J.O. Little J.O. also argued that Big J.O. did not intend for any of the shares to be left to his grandchildren.

---

[1] At the time this motion was filed, there were eighteen attorneys listed in the certificate of service. This is to note the extent of the prior matters considered and the complexity of the estate.

¶8.     On February 28, 2014, Administrator Lefoldt filed a response to Little J.O.'s motion. This response did not take a position, but asked the chancellor for a decision and a certified final judgment under Mississippi Rule of Civil Procedure 54(b), so he could take the appropriate action.

¶9.     On March 4, 2014, Patrick joined Little J.O.'s motion and attached the court's earlier September 7, 2011 judgment and the December 2, 2010 motion for construction of the codicil filed by Christy Noah, as the guardian of the estate of Jinx Peterson Smith, and Christopher Stanton Smith.

¶10.    On March 7, 2014, Trustmark Bank filed a "Memo on Practical and Legal Issues Related to Codicil 3." Trustmark argued that the distribution of shares did not make sense without the inclusion of extrinsic evidence.

¶11.    The chancellor held a hearing on November 14, 2014. Counsel appeared and were given an opportunity to examine witnesses. Then, on January 16, 2015, the chancellor executed a memorandum opinion and order and Rule 54(b) judgment. The chancellor ruled that codicil 3 was unambiguous and allocated the shares as follows:[2]

| Company | # of shares Outstanding | # of shares owned by J.O. Smith Jr. | J.O. Smith III | Lela | Patrick | Residue |
|---|---|---|---|---|---|---|
| *Big River Shipbuilders* | 100 | 80 | 32.8 | 15.6 | 15.6 | 16 |
| *Vicksburg Plant Food* | 1,000 | 800 | 328 | 156 | 156 | 160 |

---

[2] This chart only reflects this distribution of Big J.O.'s shares to Little J.O., Lela, and Patrick. It does not include the shares owned by Little J.O. and Jinx's estate prior to Big J.O.'s death.

4

| | | | | | | |
|---|---|---|---|---|---|---|
| *Yazoo River Towing* | 5,000 | 3,483 | 1,428.03 | 725 | 725 | 604.97 |

The chancellor also certified the judgment under Rule 54(b). Little J.O. and Patrick appeal.[3]

STANDARD OF REVIEW

¶12. "A chancellor's factual findings will not be disturbed if supported by substantial evidence, but if an erroneous legal standard is applied, appellate review is de novo." *In re Estate of Black*, 135 So. 3d 181, 182-83 (¶4) (Miss. Ct. App. 2013) (citing *In re Estate of Langston*, 57 So. 3d 618, 619-20 (¶6) (Miss. 2011)). Further, "[w]hen reviewing a chancellor's legal findings, particularly involving the interpretation or construction of a will, this Court will apply a de novo standard of review." *In re Estate of Saucier*, 908 So. 2d 883, 886 (¶5) (Miss. Ct. App. 2005) (quoting *In re Last Will & Testament of Carney*, 758 So. 2d 1017, 1019 (¶8) (Miss. 2000)).

ANALYSIS

¶13. The issue for this Court is whether the chancellor improperly excluded extrinsic evidence of Big J.O.'s intent in construing the codicil. Little J.O. and Patrick argue that the codicil contained a latent ambiguity. Lela argues there was no ambiguity.

¶14. "A trial court begins its review [by] looking first within the 'four corners' of the document at issue. If there exists no ambiguity within the writing, then further analysis is proscribed." *Estate of Regan v. Estate of LeBlanc*, 179 So. 3d 1155, 1159 (¶12) (Miss. Ct. App. 2015) (quoting *DeJean v. DeJean*, 982 So. 2d 443, 448 (¶10) (Miss. Ct. App. 2007)).

---

[3] While Lyn Smith and Lela Smith Flowers are both appellees in the action, Lyn filed a "confession of appeal" on November 25, 2015, in which she confessed that the chancellor had erred. Therefore, only Lela argues in favor of the chancellor's decision on appeal.

"Parol evidence may only be considered if the language of the will itself can be construed to result in more than one interpretation as to the disposition of property." *Id.* at (¶13) (quoting *Black*, 135 So. 3d at 183 (¶5)). Therefore, we must first determine if an ambiguity exits.

¶15. There is a "patent ambiguity" where a will or codicil is ambiguous on its face. Robert A. Weems, *Wills and Administration of Estates in Mississippi* § 9:9 (3d ed. 2003). Here, the codicil indicates the names of the companies, the percentage of distribution of each company, and the beneficiaries. We agree with the chancellor that there is no patent ambiguity.

¶16. However, a *latent* ambiguity occurs if the testator's intent remains uncertain when the language of the will is applied to the external facts. *Id.* Little J.O. and Patrick point to the third bequest in the codicil to demonstrate the latent ambiguity. There, the codicil purports to bequeath 29% of the Yazoo River Towing shares without the qualifying language of "shares that I own" that is in the first two bequests. This omission, according to Little J.O. and Patrick, constitutes a latent ambiguity, which required the chancellor to consider the parol evidence presented at the hearing. We agree.

¶17. When we consider the words used in the codicil along with the external facts, we conclude that Big J.O.'s intent in the codicil is unclear. At the time the codicil was executed and as of Big J.O.'s death, the companies' corporate ownership was as follows:

| Big River Shipbuilders | Shareholder | Shares | % Owned |
|---|---|---|---|
| | Estate of J.O. Smith Jr. | 80 | 80% |
| | J.O. Smith III | 10 | 10% |
| | Jinx Smith (Estate) | 10 | 10% |
| | | | |
| *Vicksburg Plant Food* | Estate of J.O. Smith Jr. | 800 | 80% |

6

|  | J.O. Smith III | 100 | 10% |
| --- | --- | --- | --- |
|  | Jinx Smith (Estate) | 100 | 10% |
| *Yazoo River Towing* | Estate of J.O. Smith Jr. | 3,483 | 69% |
|  | J.O. Smith III | 500 | 10% |
|  | Jinx Smith (Estate) | 500 | 10% |
|  | Teresia White | 517 | 11% |

¶18.   If we apply the codicil's language according to the two different interpretations, two different distributions occur.   Under Lela's interpretation, the ownership would be as follows:

|  | Shareholder | Shares | % Owned |
| --- | --- | --- | --- |
| *Big River Shipbuilders* | J.O. Smith III | 42.8 | 42% |
|  | Jinx Smith (Estate) | 10 | 10% |
|  | Patrick Smith | 15.6 | 16% |
|  | Lela Smith Flowers | 15.6 | 16% |
|  | Estate of J.O. Smith Jr. | 16 | 16% |
| *Vicksburg Plant Food* | J.O. Smith III | 428 | 43% |
|  | Jinx Smith (Estate) | 100 | 10% |
|  | Patrick Smith | 156 | 15% |
|  | Lela Smith Flowers | 156 | 16% |
|  | Estate of J.O. Smith Jr. | 160 | 16% |
| *Yazoo River Towing* | J.O. Smith III | 1,928.03 | 39% |
|  | Jinx Smith (Estate) | 500 | 10% |
|  | Patrick Smith | 505.035 | 10% |
|  | Lela Smith Flowers | 505.035 | 10% |
|  | Teresia White | 517 | 11% |
|  | Estate of J.O. Smith Jr. | 1,044.9 | 20% |

It seems illogical that Big J.O. would execute a codicil to bequeath his shares in his companies and intend to leave a portion to his residual estate or his predeceased children's heirs and not include them in the codicil.

¶19.   Under Little J.O. and Patrick's interpretation, the ownership would be as follows:

7

|  | Shareholder | Shares | % Owned |
|---|---|---|---|
| *Big River Shipbuilders* | J.O. Smith III | 51 | 51% |
|  | Jinx Smith (Estate) | 10 | 10% |
|  | Patrick Smith | 19.5 | 20% |
|  | Lela Smith Flowers | 19.5 | 19% |
|  |  |  |  |
| *Vicksburg Plant Food* | J.O. Smith III | 510 | 51% |
|  | Jinx Smith (Estate) | 100 | 10% |
|  | Patrick Smith | 195 | 19.5% |
|  | Lela Smith Flowers | 195 | 19.5% |
|  |  |  |  |
| *Yazoo River Towing* | J.O. Smith III | 2,540 | 51% |
|  | Jinx Smith (Estate) | 500 | 10% |
|  | Patrick Smith | 722 | 14% |
|  | Lela Smith Flowers | 722 | 14% |
|  | Teresia White | 517 | 11% |

Under this interpretation, Little J.O. would have 51% of each of the corporations, giving him a controlling stake in each company. It would also give the remaining shares in each corporation to Patrick and Lela without leaving any remaining shares to the residual estate.

¶20. Based on these different interpretations, bequest three could either mean that Big J.O. intended to convey the shares he owned, or that he intended distribution of the total percentage of the company. "An ambiguity is defined as a susceptibility to two reasonable interpretations." *Dalton v. Cellular S. Inc.*, 20 So. 3d 1227, 1232 (¶10) (Miss. 2009) (quoting *Am. Guar. & Liab. Ins. v. 1906 Co.*, 129 F.3d 802, 811-12 (5th Cir. 1997)). Though the inconsistent language appears only in the third bequest, the effect of the two interpretations renders the entire codicil ambiguous.

¶21. "[I]f an examination of the will shows the testator's intention to be unclear, the court will examine the facts and circumstances surrounding the testator at the time of making the will, and extrinsic evidence may be admissible to ascertain the testator's intention." 9 Jeffrey

Jackson & Mary Miller, *Encyclopedia of Mississippi Law* § 75:88 (2002). Because there are two reasonable interpretations, the codicil is ambiguous, and the chancellor should have considered the extrinsic evidence. Therefore, this Court reverses the decision of the chancellor and remands this case for further proceedings.

¶22. **THE JUDGMENT OF THE WARREN COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LELA SMITH FLOWERS.**

**LEE, C.J., BARNES, ISHEE AND CARLTON, JJ., CONCUR. WILSON, J, CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. FAIR, JAMES AND GREENLEE, JJ., NOT PARTICIPATING.**

**IRVING, P.J., DISSENTING:**

¶23. The majority reverses and remands this case to the Chancery Court of Warren County because it finds that the chancery court erred in finding no ambiguity in codicil 3 to the last will and testament of J.O. Smith Jr. I agree with the chancellor that codicil 3 is unambiguous. Therefore, I respectfully dissent. Rather than reversing and remanding this case, I would affirm the chancellor's finding that codicil 3 is unambiguous but would modify the judgment to correct the chancellor's allocation of the shares of Yazoo River Towing, because I find that the chancellor erred in making the mathematical calculations.

¶24. Codicil 3 reads as follows:

J.O. Smith III will receive in the event of my death 41% of the shares *that I own* in Big River Shipbuilders, Inc., Vicksburg Plant Food, Inc. and Yazoo River Towing, Inc.

Patrick Smith and Lela Smith Fowers will receive 39% of the stock *that I own* in Big River Shipbuilders, Inc., and Vicksburg Plant Food; and 29% of the

9

stock[4] of Yazoo River Towing, Inc., divided equally.

(Emphasis and footnote added). The majority finds ambiguity because the third bequest—that specifies that twenty-nine percent of the stock of Yazoo River Towing is to be divided equally between Patrick and Lela—does not include the language "that I own" to describe the stock being bequeathed. The majority concludes that the absence of this language in one of the three bequests made in codicil 3 evidences a latent ambiguity, because it is susceptible to two reasonable interpretations: either (1) that Big J.O. intended to convey to Lela and Patrick twenty-nine percent of the stock that *he owned* in Yazoo River Towing, or (2) that Big J.O. intended to convey to Lela and Patrick twenty-nine percent of the *total stock* of Yazoo River Towing. I agree that the bequest is susceptible to two interpretations. However, it is my view that the bequest is susceptible to only one reasonable interpretation—that in codicil 3, Big J.O. was bequeathing—in each bequest—only percentages of the percentage of stock that he owned, not percentages of all the stock of Yazoo River Towing.

¶25. The facts indicate that at the time of Big J.O.'s death, the division of ownership in Yazoo River Towing's 5,000 outstanding shares was as follows:

| Shareholder | Shares | % Owned |
|---|---|---|
| Big J.O. | 3,483 | 69% |
| Little J.O. | 500 | 10% |
| Estate of Jinx Smith | 500 | 10% |
| Teresia White | 517 | 11% |

Big J.O. did not own one hundred percent of the stock of Yazoo River Towing; rather, he

---

[4] Note that the phrase "*that I own*" is missing here.

10

owned sixty-nine percent of it. Sixty-nine percent of Yazoo River Towing's stock equates to 3,483 shares. Thus, Big J.O. could not have intended to bequeath twenty-nine percent of 5,000 shares in Yazoo River Towing to Patrick and Lela, because he did not own 5,000 shares. One simply cannot give away what one does not own.

¶26. The chancellor clearly manifested the same belief, as he maintains throughout his judgment that codicil 3 reflects Big J.O.'s unambiguous intent to leave twenty-nine percent of the stock he owned in Yazoo River Towing to Patrick and Lela:

> [Big J.O.] left the stock *he owned* to his three surviving children in the percentages stated. The effect of [Big J.O.'s] bequests of the specified percentages of the stock *he owned* in Big River Shipbuilders, Inc., Vicksburg Plant Food, Inc. and Yazoo River Towing, Inc. is that a portion of the corporate stock *owned by [Big J.O.]* passes through the residuary clause of the Will.

> The Court has construed Codicil #3 as written and signed by [Big J.O.] in plain and unambiguous language that he left the corporate stock *he owned* to each of his three living children in the percentages set forth above.

> The Court, giving effect to the plain, clear and simple language in Codicil #3 to the Last Will and Testament of [Big J.O.], hereby concludes and enters as its Final Judgment that [Big J.O.] left the stock *he owned* in Big River Shipbuilders, Inc., Vicksburg Plant Food, Inc. and Yazoo River Towing, Inc. to his three surviving children, [Little J.O.], [Patrick,] and [Lela], in the percentages stated in Codicil # 3. The effect of [Big J.O.'s] bequests of the specified percentages of the stock *he owned* in Big River Shipbuilders, Inc., Vicksburg Plant Food, Inc. and Yazoo River Towing, Inc. is that a portion of the corporate stock *owned by [Big J.O.]* passes through the residuary clause of [Big J.O.'s] Last Will and Testament.

(Emphasis added). Further, the chancellor implies in a footnote of his order that the phrase "that I own" is unnecessary and he would not read it into what Big J.O. wrote, as its absence did not diminish his finding that Big J.O. intended to bequeath twenty-nine percent of the

11

shares he owned to Patrick and Lela. I agree with the chancellor that Big J.O.'s failure to include this qualifying language in the bequest at issue is hardly a fatal flaw rendering the entire codicil ambiguous.

¶27. Unfortunately, however, the chancellor used the wrong numbers when calculating the amount of shares of Yazoo River Towing to be divided. In footnote one of his judgment, the chancellor states: "Codicil 3 leaves 29% 'of the stock of Yazoo River Towing' to Lela and Patrick, divided equally, or 14.5% of the 5,000 outstanding shares of Yazoo River Towing." Applying these numbers would result in the following division:

| Shareholder | Shares |
| --- | --- |
| Little J.O. | 1,428.03 |
| Lela | 725 |
| Patrick | 725 |
| Residue | 605.97 |

According to this calculation, Big J.O. would be devising forty-one percent—1,428.03 shares—of his 3,483 shares to Little J.O. and twenty-nine percent—1,450 shares—of the 5,000 outstanding shares to Lela and Patrick, which amounts to each receiving 725 shares. This result is wholly incompatible with the rest of the chancellor's order, in which he clearly finds that Big J.O. intended to convey forty-one percent of the shares he owned in Yazoo River Towing to Little J.O., and twenty-nine percent of the shares he owned in Yazoo River Towing to Lela and Patrick, to be divided equally. When contrasted with the rest of the judgment's language, it is apparent that the chancellor simply applied the wrong number to his calculations, and that his true intent was to divide between Patrick and Lela twenty-nine percent of the shares of Yazoo River Towing owned by Big J.O. Such a calculation would

12

have resulted in the following:

| Shareholder | Shares |
|---|---|
| Little J.O. | 1,428.03 |
| Lela | 505 |
| Patrick | 505 |
| Residue | 1045.97 |

There is absolutely no language in the remainder of the chancellor's judgment to support the finding that he interpreted codicil 3 to bequeath to Lela and Patrick twenty-nine percent of the outstanding shares in Yazoo River Towing. The fact that this single footnote uses the number of outstanding shares, which is at odds with at least three other instances where the chancellor uses the number of shares owned by Big J.O., clearly denotes a mathematical error and not an intent on the chancellor's part to allocate twenty-nine percent of 5,000 shares to Patrick and Lela.

¶28. Notwithstanding the chancellor's error in calculation, he was correct in holding that codicil 3 is unambiguous. As stated, the majority maintains that the omission of "that I own" in the third bequest of codicil 3 gives rise to two reasonable interpretations and thus constitutes a latent ambiguity; however, this is simply not the case:

> An "ambiguous" word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person *who has examined the context of the entire integrated agreement* and who is cognizant of the *customs, practices, usages and terminology as generally understood in the particular trade or business.*

*Dalton v. Cellular S. Inc.*, 20 So. 3d 1227, 1232 (¶10) (Miss. 2009) (emphasis added). The context of codicil 3, in its entirety, evidences a clear intent by Big J.O. to devise percentages of shares *that he owned* in each of the three companies in all three of his bequests. In two

13

of the three bequests, he expressly stated this intent. It would be illogical to find that because Big J.O. omitted "that I own" in the third bequest, he must have suddenly altered his desire from bequeathing shares that he owned to bequeathing total shares outstanding. Further, it would be inconsistent to conclude that Big J.O. intended to convey twenty-nine percent of the total shares outstanding in Yazoo River Towing to Patrick and Lela, when his previous statement expressly conveyed forty-one percent of the shares that he owned in Yazoo River Towing to Little J.O. The context of codicil 3 compels the conclusion that Big J.O. bequeathed to Patrick and Lela twenty-nine percent of the shares that he owned in Yazoo River Towing—not twenty-nine percent of the outstanding shares of Yazoo River Towing—because only a bequest of a percentage of the percentage of the shares that Big J.O. owned is consistent with all of the other bequests that he made in codicil 3. And while it is true that Big J.O. owned more than twenty-nine percent of the 5,000 shares of Yazoo River Towing, it would indeed be unusual terminology and usage for him to speak of bequeathing a percentage of the entire shares of Yazoo River Towing when he did not own all of the shares. Thus, when considering the entire context of codicil 3, there is no ambiguity, and it is evident that the chancellor merely applied the wrong numbers when making his calculations.

¶29.    For the reasons stated, I dissent. I would affirm the chancellor's judgment as modified to correct the chancellor's apparent miscalculation.

14